# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

No. 4:13-CV-30-FL

| | |
|---|---|
| CHARLES R. NAY, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant/Respondent. | ) |

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' cross motions for judgment on the

pleadings [DE-25, DE-28] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Claimant Charles R. Nay ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and

Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). The pending

motions are ripe for adjudication and have been referred here for review and recommendation to

the District Court in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

Having carefully reviewed the administrative record and the motions and memoranda submitted

by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be

denied, Defendant's Motion for Judgment on the Pleadings be granted, and the final decision of

the Commissioner be upheld.

## STATEMENT OF THE CASE

On July 27, 2009, Plaintiff protectively filed an application for a period of disability and

DIB and SSI alleging disability commencing March 1, 2009. R. 159, 167. Plaintiff's

applications were denied initially and upon reconsideration. R. 109, 117. A hearing before the Administrative Law Judge ("ALJ") was held on June 2, 2011, at which Plaintiff, represented by an attorney, and a vocational expert ("VE") appeared and testified. R. 33. On June 23, 2011, the ALJ issued a decision denying Plaintiff's claims finding Plaintiff not disabled within the meaning of the Act. R. 12-27. Plaintiff then requested a review of the ALJ's decision by the Appeals Council. R. 5, 9. The Appeals Council denied Plaintiff's request for review on December 10, 2012. R. 3-5. Plaintiff then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d

2

585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "[L]istings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Plaintiff alleges the following errors by the ALJ: (1) failing to give controlling weight to the opinion of Plaintiff's treating physician, (2) failing to elicit sufficient testimony from the VE as to how Plaintiff can work standing up while using a cane, and (3) failing to explain the contradiction between the ALJ's findings as to objective medical evidence and Plaintiff's allegations of disabling pain. Br. in Supp. of Pl.'s Mot. for J. on Pldgs. ("Pl.'s Br.") [DE-26] at 2-6.

3

## FACTUAL HISTORY

### I.    ALJ's Findings

The ALJ's decision followed the above-described sequential evaluation process, concluding
at step five that Plaintiff had the RFC to perform other work.  R. 26.  As such, the ALJ found
Plaintiff "not disabled" as defined in the Social Security Act.  R. 26.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since
March 1, 2009, the alleged date of disability onset.  R. 17.  Next, the ALJ determined Plaintiff had
the following severe impairments: history of back fusion surgery, history of burns to upper and lower
extremities, diabetes, coronary artery disease, hypertension, hyperlipidemia and obesity.  R. 17-18.[1]
However, at step three, the ALJ concluded these impairments were not severe enough either
individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R.
Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),
416.925 and 416.926) ("the Listings").  R.19-20.  Prior to proceeding to step four, the ALJ assessed
Plaintiff's RFC, finding Plaintiff had the ability to perform light work[2] except that Plaintiff requires
a sit or stand option and can only occasionally climb stairs or ramps, and never climb ladders, ropes

---

[1]The ALJ found Plaintiff had the following non-severe impairments: stomach pain and
constipation due to gastroesophegeal reflux disease (GERD) and gastritis, hearing loss and sleep
apnea.  R. 18-19.  The ALJ found that Plaintiff had a non-medically determinable impairment of
clogged and swollen saliva gland and seizures.  R. 19.

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking or standing, or when it involves
sitting most of the time with some pushing and pulling of arm or leg controls. To be considered
capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities. If an individual can perform light work, he or she can also
perform sedentary work, unless there are additional limiting factors such as the loss of fine
dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

or scaffolds. R. 20-24. The ALJ found further that Plaintiff can perform occasional bending, balancing, stooping, crawling, kneeling or crouching and should have only occasional overhead reaching with both hands. *Id.* The ALJ found that Plaintiff must use an assistive device such as a cane and must avoid hazardous machinery and occupations with vibrations due to prior fusion surgery as well as work in a low noise environment. *Id.* While the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. R. 21. At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of past relevant work. R. 24. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. R. 25-26.

## II.    Plaintiff's Testimony at the Administrative Hearing

At the time of the administrative hearing, Plaintiff was 40 years old and unemployed. Plaintiff obtained his GED around 1995 and lives at home with his wife and five children, ranging in age from 2 to 19 years of age. R. 43, 57. Plaintiff's wife is employed. R. 58. Plaintiff remains at home alone throughout the day and stays in his bed 15 hours per day. R. 58-60. He testified he takes medications as prescribed, which makes him sleepy, drowsy and groggy, and which is part of the reason he spends time in bed. R. 61.

Plaintiff worked as a bartender until February or March 2009. R. 38. He owned a bar from approximately 2005-2008, when he sold the bar. R. 38-39. As owner, Plaintiff ordered all bar stock and supplies. R. 39. Plaintiff has held jobs as a cook, dishwasher, bowling machine operator and

5

bowling instructor. R. 39. In 2001, Plaintiff worked at an automobile service business where he changed oil and tires. R. 40. Afterward, he worked as a sporting goods assistant at K-Mart for about one year where he stocked shelves and sold sporting goods and supplies. R. 39-40. During his employment at K-Mart, Plaintiff injured his back while loading a table into a customer's vehicle. R. 40.

Plaintiff has also been employed as a telephone book distributor, and for approximately 3 to 4 years, he worked for several grocery stores as a stock clerk and cashier. R. 41. Plaintiff was also once employed to assist with the installation of the heating and ventilation system at the New Bern Police Station, where Plaintiff used a ladder to paint sealant on air ducts. R. 41-42. Plaintiff has worked at fast-food and other restaurants, including pizza delivery, and he was a helper for a tree service company where his job was to load fallen tree limbs into a chipping machine. R. 42-43.

Plaintiff explained numerous medical conditions supporting his disability claim and his inability to work full-time. Plaintiff has hearing loss in both ears which mostly effects his right ear. R. 44-45. Plaintiff said he is unable to hear low speaking, television, females and children because it sounds scratchy. R. 45-46. Although Plaintiff had tubes placed in his ears, his hearing did not improve. R. 46. Plaintiff testified he has a clogged saliva gland, which causes dry mouth and effects his ability to taste and hear. R. 46. According to Plaintiff, his saliva gland swells about every four to five months causing pain and interfering with his ability to eat. R. 47. Plaintiff was placed on antibiotics which reduces the swelling in about a week. R. 47.

Regarding Plaintiff's range of motion, Plaintiff said that he is unable to move his head to look up, down, left and right without experiencing pain. R. 48-49. Plaintiff has sharp pain in his right shoulder which runs down his entire arm when he tries to lift anything. R. 49. Although

6

Plaintiff can lift a gallon of milk without feeling pain, he would feel pain if he lifted 2 gallons of milk with his right hand. R. 49-50. Plaintiff experiences chronic pain and numbness in the fingers of his right hand, but can make a fist with his right hand. R. 50. He needs to hold his cane in his left hand because his right hand is worse than his left hand. Plaintiff's fingers on his right hand become numb several times per day. Plaintiff said that he had nerve tests performed several years ago and was told then that his nerves in his arms and legs are deteriorating. R. 51. Plaintiff stated that his condition has worsened since the tests were performed. He said his left shoulder does not hurt, but that he experiences numbness in his let hand and left arm. *Id.* He is able to make a fist with his left hand and he can lift both arms above his head and can reach with both arms. 51. Plaintiff is able to carry a gallon of milk in his left hand easier than in his right hand. R. 52. Plaintiff is able to write some and sign his name with his right hand. *Id.*

Plaintiff said that he experiences shortness of breath and uses a breathing machine at night due to sleep apnea. Plaintiff testified that he has had "heart issues" the past few years and thought that he had experienced several heart attacks. *Id.* However, these symptoms were determined to be related to other issues. *Id.* Plaintiff has a stomach disease called gastroparesis, which causes him pain. R. 53. He described the pain as if someone were jabbing him with a knife. As a result of his condition, he has to have an enema to have a bowel movement every two days.

Since his accident at K-Mart in 2002, Plaintiff has undergone back fusion surgery. R. 54. While Plaintiff experienced some improvement following surgery by regaining feeling into his left leg, he continues to experience pain in his back if he sits down or stands up for longer than 15-20 minutes, after which he needs to lay down. R. 54-55.

Plaintiff said that he has constant pain in his back and legs. R. 55. Although his pain is

7

alleviated a little when he stands from a seated position, his pain returns after 15-20 minutes requiring him to change positions. R. 55-56. Both of his legs hurt from his knees to his feet and his pain radiates from his back running down both legs to his toes. R. 56-57. The pain is constant and on an increasing pain scale; Plaintiff describes the pain as a seven out of ten, sometimes more, even after having taken pain medication. R. 56. Plaintiff said he can walk one block. *Id.* He has difficulty tying his shoes and getting dressed, requiring assistance from his children. *Id.* Plaintiff appeared to be using a cane at the administrative hearing, which Plaintiff's physician, Dr. Moore, instructed him to obtain, though Plaintiff was unsure whether Dr. Moore had prescribed the cane. R. 43.

Plaintiff stated that in 2007 he was burned over 48% of his body and that as a result of his burns, Plaintiff experiences pain from the effects of the sun. R. 60.[3]

Plaintiff has experienced fainting spells on two occasions while he was operating a motor vehicle, the most recent was about 4 weeks before the administrative hearing. R. 61. As a result Plaintiff had a traffic accident and has been advised by a medical review board that the state is probably going to revoke his driving privileges. R. 61, 62. He said his condition is getting worse because his range of motion "and everything else is all going downhill." R. 62.

Plaintiff described that on some days he is not able to get out of bed and has difficulty managing his two-year old child, who has since been placed into day care. R. 58. Some days he is able to care for himself, getting out of bed, showering and dressing. *Id.* He has a portable commode by his bed, but sometimes he has difficulty getting out of bed to use the restroom. *Id.* Plaintiff has

_____

[3]According to the medical record, Plaintiff sustained burns to 24% of his total body surface area in 2007. R. 293, 297-98.

8

a walker and makes breakfast for himself, but throughout the day he lays in bed and watches television.

Plaintiff attends his children's after-school events, such as band and softball games, but he is not able to attend long band concerts or double-header games because he cannot tolerate sitting outside in the sun due to burns he has sustained. R. 60.

## III. Vocational Expert's Testimony at the Administrative Hearing

Coretta Kay Haroldson testified as a VE at the administrative hearing. R. 62-67. After the VE's testimony regarding Plaintiff's past work experience ®. 63-64), the ALJ asked the VE to assume a hypothetical individual of the same age, education and work experience as Plaintiff and posed the following hypothetical:

> He has an RFC to perform light exertional work. This individual should only occasionally climb stairs or ramps; should have only occasional bending, balancing, stooping, crawling, crouching, or kneeling. This individual should never climb ropes, ladders or scaffolds. This individual should avoid jobs with hazardous machinery and occupations with vibrations due to prior fusion surgery. This individual should work in a low noise environment.

R. 64. The VE testified that the hypothetical individual could not perform Plaintiff's past work either as Plaintiff performed it or as it is performed in the national economy. R. 64. The VE testified further that the hypothetical individual could perform protective clothing issuer at a light level of exertion with an SVP of 2 (DOT # 222.687-046). R. 65. The VE testified that "the same numbers would hold true for an individual who was a ticket clerk" (DOT # 211.462-010) or a ticket stamper (DOT # 229.587-018), each of which are at the light exertional level and have a SVP of 2. R. 65.

The ALJ then modified the hypothetical posed to the VE:

> Now assume further that this individual would require a sit/stand option. By sit/stand option I do not mean that this individual would be off task. I mean this

9

individual would work a position where permission is not required to sit and/or stand. The individual would be able to sit and/or stand while performing the tasks at hand. Additionally, this individual should have only occasional overhead reaching with both hands or both arms. Does that change the sampling you just provided?

R. 65. In response, the VE testified that most light unskilled jobs in the national economy do not allow the individual to have the leeway of choosing how to perform the job, whether sitting or standing. R. 65. The jobs described by the VE, while not included within the DOT definition, would provide an employee with a table that is waist high or a stool and chairs for the individual to be able to change positions as long as they did not leave the work station. R. 65-66. Regarding the protective clothing issuer position, the individual would have an opportunity to sit when they were not gathering the garments that would need to be issued to other employees. R. 66.

The ALJ next asked the VE to assume the hypothetical individual would require the assistance of an ambulatory device, like a cane, for ingress and egress from the workplace. R. 66. The VE testified this would not change the sampling. The VE stated that while the light jobs require that an individual be able to walk and ambulate and carry with both hands throughout a large portion of the day, the particular jobs described would not have such requirement. R. 66. Next, the ALJ asked the VE to assume the individual would miss three or more days per month from work due to various issues. The VE responded that an individual who missed three days of work would be considered as taking excessive absences from work, which would not be tolerated in competitive industry or in a full time and consistent basis in the national economy. R. 66-67.

Plaintiff's attorney then examined the VE inquiring whether the hypothetical individual would be able to perform any of the jobs if the individual were not able to maintain their attention and concentration for two hour intervals due to various medical issues. R. 67. The VE responded

10

in the negative, stating that two hour increments are required for full time employment in the national economy. R. 67. In closing, the VE testified that her responses to the questioning were consistent with the DOT, other than to explain how the sit/stand options are applied in competitive industry. R. 67.

## DISCUSSION

## I. The ALJ's Evaluation of Plaintiff's Treating Physician's Medical Opinion

Plaintiff contends that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating physician Staley Moore, M.D. Pl.'s Br. 2-3. In particular, Plaintiff argues that the ALJ's conclusion, that Dr. Moore's findings were inconsistent with his own records is not supported by substantial evidence. *Id.*

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"); *Wireman v. Barnhart*, No. 2:05–CV–46, 2006 U.S Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may under the regulations, assign no or little weight to a medical opinion, even one from a treating source ... if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §

11

404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 SSR LEXIS 9, at * 12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in a one-page form dated March 3, 2011, entitled "Physical Capacities Evaluation." R. 346. According to the form, Plaintiff should avoid all lifting and carrying, but Plaintiff can sit, stand or walk 2 hours in an 8 hour day, and requires a cane to ambulate. Plaintiff should never perform pushing or pulling, or bending and/or stooping, rarely climb stairs or ladders or balance, and should occasionally perform fine or gross manipulation. *Id.* A box is checked on the form indicating it is Dr. Moore's opinion that Plaintiff is likely to be absent from work as a result of his impairment or treatment for more than four days per month. *Id.* Where prompted on the form, Dr. Moore's entire narrative as to the basis for his responses is "severe chronic sciatica." *Id.* Although the form appears in the record, it is essentially a questionnaire, not appearing to correspond to a contemporaneous examination of Plaintiff.

Form reports such as questionnaires are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue,* No. BPG–09–0636, 2010 U.S. Dist. LEXIS 77379, at *16,

12

2010 WL 3038093, at \*6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added). Also, while statements concerning an individual's inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. § 404.1527(e)(1); SSR 96–5p, 1996 SSR LEXIS 2, at \*5, 1996 WL 374183, at \*2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). The ALJ acknowledged implicitly the length, frequency, nature and extent of Plaintiff's treatment relationship with Dr. Moore via multiple references to his treatment notes. R. 21, 24. Here, the ALJ acknowledged recognized Plaintiff's pain and noted Dr. Moore's treatment notes of Plaintiff's pain being 7/10 with medication and 10/10 without medication. R. 399. However, as explained by the ALJ, the relevant question in Plaintiff's case is not whether Plaintiff was in pain but rather whether his pain was so severe as to keep the Plaintiff from working. R. 23.

As observed by the ALJ, Dr. Moore did not "state any functional limitations or offer any other evidence to support his [March 2011] opinion." *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Moore's treatment records provide no support of his opinion as they provide no physical examination findings nor do they offer insight into Claimant's functional abilities. R. 399; *see Paschall v. Astrue*, No. 5:10-CV-161-FL,

13

2011 WL 1750757, at \*4 (E.D.N.C. May 6, 2011) (finding that treating physician's letter that claimant was totally and permanently disabled accorded little weight where treating physician's treatment notes did not provide any functional limitations). Furthermore, treatment records from other sources considered by the ALJ do not support Dr. Moore's conclusion and militate against a finding that the pain was more than a mild limitation. For example, an emergency room summary from January 4, 2010, recorded Plaintiff's complaint of chronic pain in his lower extremities, but upon examination Plaintiff was found to be without clubbing, cyanosis or edema, and his range of movement of his upper and lower extremities was normal and without pain. R. 381. As noted by the ALJ, on April 27, 2010, Dr. Moore noted that Plaintiff has had "sciatica for x years" and experiences low mid back pain radiating to his left leg, and his pain level is 7/10 with medication and 10/10 without medication. R. 399. Yet, the record also reports that on August 6, 2010, Plaintiff presented to the hospital with chest pain and leg cramps after having played a round of golf. R. 445. Upon examination of Plaintiff's musculoskeletal symptoms, while muscle pain was noted, there were no reports of back pain, no swelling or decreased range of motion. R. 446. On July 11, 2010, an examination of Plaintiff's musculoskeletal functions revealed a full range of motion of his extremities, while noting his reported chest pain of 8/10 radiating to his back and arms. R. 488-89. On September 28, 2010, during a visit to Dr. Kiger regarding a complaint of chest pain, Plaintiff reported no back or flank pain. R. 509. On October 14, 2010, Plaintiff was noted to have a full range of motion, and Plaintiff denied any swelling in his legs or musculoskeletal pain. R. 617, 619. Upon examination on February 12, 2011, Plaintiff presented a full musculoskeletal range of motion in all four extremities, muscle strength 5/5 in all 4 extremities. R. 585. On multiple examinations, Plaintiff denied any numbness, weakness or tingling in extremities, R. 525, or edema or cyanosis.

14

R. 368, 369, 374, 376, 421, 423, 500, 510, 525, 519. Other records repeat findings that Plaintiff had normal range of motion. R. 413, 448.

The ALJ properly concluded that treatment notes and Plaintiff's reports of activities recorded therein do not support Dr. Moore's medical opinion. The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Moore's opinion. Additionally, the ALJ complied with S.S.R. 96–2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Moore's opinion and the reasons for said weight. *See Koonce v. Apfel,* No. 98–1144, 166 F.3d 1209, 1999 U.S.App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir.1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Moore's opinion.

The ALJ applied the correct legal standard in assessing Dr. Moore's opinion and the ALJ's decision to accord it little weight is supported by substantial evidence. Accordingly, the ALJ did not err in his assessment of Dr. Moore's opinion.

## II. The VE's Testimony was Sufficient to Support the ALJ's Finding at Step Five.

Plaintiff next argues that the VE's testimony was insufficient to support the ALJ's finding at step five because the VE did not explain how the hypothetical individual could perform the representative occupations (protective clothing issuer, ticket clerk or ticket stamper) while standing and holding a cane with one hand. Pl's Br. at 4-5; R. 25-26. According to Plaintiff, while the jobs

15

identified by the VE do not require the employee to walk and carry with both hands throughout a large portion of the day, the VE testimony fails to address the individual's inability to use both hands for manipulating and handling objects while standing up holding a cane. Pl.'s Br. at 4. Plaintiff argues that the Selected Characteristics of Occupations ("SCO") describes the identified jobs as requiring frequent handling of objects which conflicts with the Plaintiff's need to grasp his cane while working. *Id.* at 4-5.

Pursuant to SSR 00-4p, the ALJ must "inquire, on the record, as to whether or not" the "[o]ccupational evidence provided by a VE" is "consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 SSR LEXIS 8, at *5, 2000 WL 1898704, at *2; *see Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir.1999) (explaining the ALJ's duty to develop the record includes "[q]uestioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations."). Where the DOT is silent as to the availability of a sit/stand option as to described jobs, it is proper for the ALJ to consider VE testimony to supplement the DOT job descriptions. *Hare v. Astrue,* No. 7:08-CV-36-FL, 2009 WL 873993, at *8 (E.D.N.C. Mar. 24, 2009). Here, the VE testified that the positions of protective clothing issuer, ticket clerk or ticket stamper worker were examples of light work that would accommodate a sit/stand limitation as well as the use of an assistive device. R. 25-26, 66-67. The VE's testimony was in response to an inquiry from the ALJ as to whether the positions would accommodate the use of an assistive device for the purpose of ingress and egress from the workplace, which the VE testified the positions would accommodate the ALJ's described use. R. 66. The VE testified further that the described jobs would not have a requirement that the individual ambulate and carry with both hands throughout a large portion of the day. R. 66. The ALJ then inquired, on

16

the record, as to whether the occupational evidence provided by the VE was consistent with the occupational information supplied by the DOT, to which the VE responded in the affirmative. R. 67. Accordingly, the record demonstrates that the ALJ satisfied his obligation under S.S.R. 00–4p.

Furthermore, the publication Plaintiff cites does not appear support his argument that there is a conflict between the SCO and the VE's testimony. Plaintiff contends he is unable to perform the handling of objects with both hands, as required by the described jobs, while also holding a cane. However, the Selected Characteristics of Occupations defines "handling" as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands." Appx. C (emphasis added). As the VE's testimony is consistent with this description, there does not appear to be a conflict.

## III. The ALJ Properly Evaluated the Credibility of Plaintiff's Statements.

Plaintiff contends that the ALJ erred in evaluating the credibility of Plaintiff's testimony. Pl.'s Br. at 5-6. In particular, Plaintiff claims the ALJ's findings regarding Plaintiff's pain at steps one and two pursuant to *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) are contradictory.[4]

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must then evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the

---

[4]Because Plaintiff has restricted his objections to the ALJ analysis of his complaints of pain, the court's discussion is limited to those impairments Plaintiff describes as causing pain.

17

evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-7p, 1996 WL 374186, at \*4. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. SSR 96-7p, 1996 WL 374186, at \*4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at \*3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

Plaintiff's argument describes a conflict between the ALJ's findings at step one and step two. However, the ALJ's findings that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, does not preclude a finding that such symptoms are not credible to the extent they are not consistent with the ALJ's RFC assessment. R. 21, 24.

18

After reviewing the ALJ's decision, this court finds that ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding the objective evidence, the ALJ summarized Plaintiff's medical records as to each impairment and noted Plaintiff's functional limitations. R. 17-24; *see Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a plaintiff's complaints of pain and level of daily activities.") (citations omitted), *aff'd*, 179 F. App'x 167 (4th Cir. May 5, 2006).

Regarding Plaintiff's stomach pain, the ALJ noted Plaintiff's complaint of such pain and hospital visits in 2010 and 2011, and a diagnosis of GERD and abdominal pain. R. 18, 543-64, 603-28. The ALJ noted findings by Plaintiff's gastroenterologist attributing his abdominal pain to an unknown cause, noting Plaintiff had a normal gastric emptying study. R. 544. The doctor suspected Plaintiff's pain and nausea were related to Plaintiff's use of oxycontin. R. 18, 544, 551. The ALJ considered Plaintiff's February 2011 visit to the hospital where he reported stomach pain and after receiving medication reported no more symptoms. R. 18, 656-96. The doctor recommended Plaintiff control his diet and continue his medication. R. 560, 561, 564. The ALJ concluded the evidence showed Plaintiff's stomach pain to be of an indeterminable origin and his GERD to be controlled with medication and did not present any functional limitations.

The ALJ also noted Plaintiff's testimony regarding the extent of his chronic back pain as well as pain in his neck, shoulders, arms, hands and feet. R. 20, 21. Plaintiff also described pain from severe burns. R. 20-21. Although Plaintiff contends he could not work due to these conditions, the

19

ALJ noted Plaintiff's testimony that he could walk up to a block and could lift his arms up and own as well as make a fist with both hands, although with greater pain in his right hand. R. 21. The ALJ also noted that Plaintiff was using a cane at the hearing but that he was uncertain whether it had been prescribed by his doctor. R. 21, 43.

The ALJ noted Plaintiff's back fusion surgery in 2002, prior to Plaintiff's alleged period of disability and that Plaintiff subsequently showed improvement in his back and lower extremities despite complaints of pain. R. 271-76. While Plaintiff's doctor noted normal lower extremity strength and the existence of pain, Plaintiff's symptoms did not appear to radiate beyond Plaintiff's hip, and Plaintiff's doctor indicated he would consider conservative care measures to be effective. R. 277.

The ALJ considered Plaintiff's April 2010 complaint of back pain to Dr. Moore who reported Plaintiff's low to mid back pain without numbness and diagnosed him with sciatica. R.399. The ALJ did find Plaintiff credible to the extent the ALJ found Plaintiff limited to light work with additional postural and reaching limitations avoiding hazardous machinery and occupations with vibration due to chronic back pain. R. 21. As noted above however, the ALJ considered the medical record as a whole indicating that despite complaints of pain, Plaintiff's continued to have functionality and movement in his extremities.

The ALJ considered Plaintiff's chest pain and nausea. In particular, the ALJ noted records from Plaintiff's hospital admission regarding chest and epigastric pain with discomfort radiating to his arms. R. 565-96. These records show no evidence of coronary infarction or ischemia. R. 576. Plaintiff is reported to move with 5/5 strength with no clubbing cyanosis or edema. R. 566, 584, 592. Upon physical examination of these complaints, Plaintiff revealed no remarkable findings. R.

20

569-70, 571. Plaintiff was diagnosed with chest pain and a history of "non-critical" coronary artery disease and poorly controlled diabetes, which was better controlled by Dr. Moore, Plaintiff's primary physician. R. 572, 578, 580, 583, 586. Plaintiff was advised to control his diet. R. 572. Plaintiff's hypertension was found to be reasonably well-controlled but Plaintiff's cholesterol medication was changed to improve his cholesterol readings. R. 580.

The ALJ considered medical records relative to Plaintiff's burns. R. 293-335. In particular, the ALJ noted Plaintiff received third-degree burns to both arms and legs and that grafting was performed in August 2007. These records indicate Plaintiff had returned to many of his normal activities after sustained burns despite reported pain, and that his physician did not take him out of work. R. 294-95. Plaintiff is reported to be able to ambulate without difficulty. R. 298. Plaintiff was advised when outside he should apply sun screen to his graft sites, and medical notes indicate the graft sites are healing and Plaintiff's pain (5/10) is controlled. R. 304. The ALJ also considered burns Plaintiff sustained to his face in December 2009. R. 411-13. The ALJ noted these were diagnosed as superficial first degree burns and Plaintiff was prescribed percoset and neosporin and the doctor instructed Plaintiff not to work 2 days. R. 413. Plaintiff was noted to have a full range of motion of his fingers and extremities. R. 413. The ALJ noted burns Plaintiff sustained in June 2010 to his finger tips, diagnosed as superficial first and second degree burns. R. 394-98. Plaintiff complained of pain (7/10) and a burning sensation. R. 397. He had a full range of motion of his fingers. As noted by the ALJ, Plaintiff was given neosporin and percoset and was discharged home. R. 398. The ALJ also noted that Plaintiff experienced chest pain and a fainting episode in August 2010 after having played a round of golf, yet was not directed to avoid extreme temperatures, and was only advised to have limited heat exposure over the weekend. R. 442-51.

21

The ALJ found that despite Plaintiff's complaints of pain, Plaintiff reported no more than mild limitations in his activities of daily living. R. 23. As noted by the ALJ, Plaintiff testified that on some days he can take care of himself, including showering, dressing and making breakfast. R. 58. Plaintiff testified that he is able to attend his children's extra-curricular activities although there is a limitation on his ability to tolerate events of a longer duration and whether they take place outside for a long period of time. R. 23, 59. Plaintiff is reported to have played a round of golf in August 2010. R. 442. As noted, the record shows some non-compliance on the part of Plaintiff with medical treatment, but the medical record overall shows non-aggressive treatment recommendations and minimal changes in his medications. R. 23, 295.

The ALJ considered Plaintiff's alleged symptoms to the extent they were credible. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Plaintiff's alleged symptoms, the medical record and Plaintiff's testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.").

Finally, to the extent Plaintiff's argument may be construed as advocating that a finding in favor of claimant at the first step of the *Craig* analysis establishes a 'presumption' of credibility that must be overcome by specific evidence at the second step, such a theory has been rejected by this court. *See Felton-Miller v. Astrue*, No. 2:10-CV-5-FL, 2010 WL 4809028, at *5-6 (E.D.N.C. Nov. 17, 2010), *aff'd*, 459 F. App'x 226 (4th Cir. Dec. 21, 2011) (per curiam); *Peterson ex rel H.B. v. Astrue*, No. 7:10-CV-39-FL, 2011 WL 285564, at *2 n.1 (E.D.N.C. Jan. 26, 2011); *see also Green v. Colvin*, No. 1:10CV561, 2013 WL 3206114, *12 (M.D.N.C. June 24, 2013), *adopted by* 2013 WL

22

4811705 (M.D.N.C. Sept. 9, 2013). For the foregoing reasons, Plaintiff's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court recommends Plaintiff's Motion for Judgment on the Pleadings [DE-25] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-28] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted the 5th day of March 2014.

Robert B. Jones, Jr.
United States Magistrate Judge