IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 4:13-CV-30-FL

| | | |
|---|---|---|
| CHARLES R. NAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 25, 28).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued a memorandum and recommendation ("M&R") (DE 31), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court rejects the recommendation of the magistrate judge, grants plaintiff's motion, denies defendant's motion, and remands this case for further proceedings.

**BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 27, 2009, alleging disability beginning March 1, 2009. This

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

application was denied initially and upon reconsideration. Hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated June 23, 2011. The appeals council denied plaintiff's request for review on December 10, 2012, and plaintiff filed the instant action on February 7, 2013.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "[Substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315

2

(4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation.  At step one, the ALJ found that plaintiff had not engaged in gainful employment since March 1, 2009.  (R. 17).  At step two, the ALJ found that plaintiff had the following severe impairments: history of back fusion surgery, history of burns to upper and lower extremities, diabetes, coronary artery disease, hypertension, hyperlipidemia, and obesity.  (R. 17-18).  He also found that plaintiff had the following non-severe impairments: stomach pain and constipation due to gastroesophageal reflux disease (GERD) and gastritis, hearing loss, and sleep apnea.  (R. 18-19).  The ALJ also found that plaintiff had a non-medically determinable impairment of clogged and swollen saliva glands and seizures.  (R. 19).  However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in the regulations.  (R. 19-20).

3

Prior to proceeding to step four, the ALJ determined that plaintiff had residual functional capacity ("RFC") to perform light work with the following restrictions: requires a sit or stand option while working; only occasionally climb stairs or ramps, and never climb ladders, ropes, or scaffolds; perform only occasional bending, balancing, stooping, crawling, kneeling, or crouching, and should have only occasional overhead reaching with both hands; must use an assistive device such as a cane while working; avoid hazardous machinery and occupations with vibrations due to prior fusion surgery; and work in a low noise environment. (R. 20). In making this assessment, the ALJ found plaintiff's statements about his limitations were not fully credible. (R. 21). At step four, the ALJ determined plaintiff did not have the RFC to perform the requirements of his past relevant work. (R. 24). At step five, upon considering plaintiff's age, education, work experience, and RFC, as well as testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25-26). Accordingly, the ALJ determined plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant time period. (R. 26).

B.   Analysis

Plaintiff raises three objections to the M&R, incorporating in part arguments raised in his brief in support of his motion for judgment on the pleadings. Specifically, plaintiff argues that: (1) the ALJ failed by not according controlling weight to the opinion of a treating source; (2) the ALJ improperly evaluated the credibility of plaintiff's statements; and (3) the ALJ relied upon insufficient VE testimony. Upon *de novo* review of plaintiff's objections, the court concludes that the first two objections should be overruled, but the third objection should be sustained, and the court orders remand.

4

1. The ALJ's Evaluation of Treating Source Opinion

Plaintiff contends the ALJ erred by not giving controlling weight to the March and May 2011 treating source opinions of Dr. Staley Moore. Although the opinion of a treating source generally is entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 589-90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. If the ALJ determines a treating source opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to that opinion. SSR 96-2p, 1996 WL 374188, at *5.

Here, the ALJ accorded limited weight to Dr. Moore's March 2011 opinion because Dr. Moore's findings were inconsistent with his own records. (R. 24). The ALJ accorded little weight to the May 2011 opinion because it did not include specific functional limitations, and was unclear and conclusory. (R. 24).

As discussed by the ALJ, in his March 2011 opinion, Dr. Moore opined that because of severe, chronic sciatica, plaintiff: (1) should avoid lifting and carrying; (2) could sit, stand, or walk no more than two hours in an eight hour workday; (3) needs a cane to ambulate in a normal workday; (4) should never push or pull with arm or leg controls, rarely climb stairs or ladders, only

5

occasionally perform gross and fine manipulation, and never perform any bending or stooping movements; (5) would be likely to miss more than four days per month because of his medical condition. (R. 346). The ALJ relied upon Dr. Moore's own treatment notes in assigning little weight to this opinion. (R. 24).

The record reflects that at the time plaintiff was diagnosed with chronic sciatica on April 27, 2010, Dr. Moore described plaintiff's pain as 7/10 with medication and 10/10 without medication. (R. 399). However, at the time of this diagnosis, Dr. Moore did not increase the dosage of plaintiff's prescriptions for either Oxycontin or Percocet. (R. 399-400). Furthermore, none of Dr. Moore's treatment notes contain any information about plaintiff's functional abilities as affected by chronic sciatica. (See R. 399-400). Dr. Moore's March 2011 opinion about the severity of plaintiff's impairment is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), and thus the ALJ properly accorded "significantly less weight" to this opinion. Craig, 76 F.3d at 590.

In addition, as noted in the M&R, Dr. Moore's March 2011 opinion is inconsistent with substantial evidence in the record from other medical sources. The M&R provides a detailed listing of the specific portions of the record that contradict Dr. Moore's opinion. (See M&R 14). Particularly noteworthy are the treatment notes following an August 6, 2010, emergency room examination by Dr. Jazman Beach. (R. 448). Plaintiff went to the emergency room on this date because he started experiencing chest pain while playing golf. (R. 442). Dr. Beach examined plaintiff and noted that his musculoskeletal system was normal, having "normal ROM, normal strength, no tenderness, no swelling, no deformity." (R. 448). Playing golf is inconsistent with Dr. Moore's opinion that plaintiff should never perform bending movements. Furthermore, there is no

6

evidence in the record of deterioration in plaintiff's condition from the time he played golf in August 2010 until Dr. Moore's opinion in March 2011.

Dr. Moore's May 2011 opinion is contained in a May 13, 2011, letter to an unidentified entity, wherein Dr. Moore expressed the opinion that plaintiff's "problems prohibit him from taking adequate care of his young son." (R. 638). The ALJ accorded little weight to this opinion because it did not include specific functional limitations, and the definition of "adequate" is unclear and conclusory. This opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), and thus the ALJ properly accorded "significantly less weight" to this opinion. Craig, 76 F.3d at 590. Dr. Moore does not present any "relevant evidence" to support the opinion. See 20 C.F.R. § 404.1527(c)(3). The ALJ's decision to give little weight to this opinion is supported by the relevant regulatory factors that courts evaluate in reviewing the weight given to medical opinions. See Johnson, 434 F.3d at 654 (listing non-exclusive list of factors).

The ALJ listed the weight assigned to the treating source opinions and gave specific reasons for discounting these opinions. The court's duty is to determine if substantial evidence supports the ALJ's conclusion, not to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Substantial evidence in the record supported the decision to assign "little weight" to the treating source opinions. Therefore, this objection is overruled.

2. The ALJ's Credibility Determination

Next, plaintiff contends the ALJ wrongfully determined plaintiff's credibility.

Federal regulations, 20 C.F.R. §§ 416.929 and 404.1529, "provide the authoritative standard

7

for the evaluation" of subjective complaints of pain and symptomology. Craig, 76 F.3d at 593. "Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process." Id. at 594. At step one, the ALJ must determine whether there is objective medical evidence showing plaintiff has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). "The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p, 1996 WL 374186, at *2. At step two, if this threshold requirement is satisfied, then the ALJ " must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms." Id.

If the objective medical record does not substantiate plaintiff's statements regarding the intensity, persistence, or functionally limiting effects of pain, then the ALJ must make a credibility determination of plaintiff's statements based on consideration of the entire case record, including medical records, medical opinions, and plaintiff's statements.[2] Id.; see also 20 C.F.R. §§ 404.1529(c) and 416.929(c). The ALJ must delineate specific reasons for the credibility determination. Id. A plaintiff's allegations of pain and other symptoms

---

[2] SSR 96-7p lists seven factors the ALJ

> must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also 20 C.F.R. §§ 404.1529(c) and 416.929(c).

may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, [but] they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the [plaintiff] alleges [he] suffers.

Craig, 76 F.3d at 595.

Here, the ALJ considered plaintiff's subjective symptoms that are associated with his impairments, and found first that plaintiff had medically determinable impairments which reasonably could be expected to cause the alleged symptoms. (R. 20-21). However, at the second step the ALJ found that plaintiff's statements as to the extent of his pain were not fully credible where they were inconsistent with objective evidence of record. (R. 21).

Plaintiff contends the ALJ's credibility determination at step two contradicts his finding at step one, arguing that a favorable step one determination required objective medical evidence that made it "reasonably likely" that plaintiff would have the pain alleged in the amount and degree alleged. Therefore, he contends, it cannot also be true at step two that "his allegations are inconsistent with the objective evidence of record." (R. 21).

Plaintiff misapprehends the substance of the ALJ's obligation in conducting the two-step evaluation of subjective complaints of pain. "The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms *does not involve* a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p, 1996 WL 374186, at *2 (emphasis added). Accordingly, when the ALJ decided step one in plaintiff's favor, he only determined whether plaintiff's medical impairments "could reasonably be expected to produce" the symptoms alleged. Craig, 76 F.3d at 594. However, "[i]t is only *after* a claimant has met [his] threshold obligation [at step one] . . . that the *intensity and*

9

*persistence of the claimant's pain, and the extent to which it affects [his] ability to work*, must be evaluated." Id. at 595 (second emphasis added). Thus, a favorable decision at step one does not determine whether plaintiff's complaints regarding the "intensity, persistence, or functionally limiting effects" of his pain are credible.

The portion of the ALJ's decision cited by plaintiff reflects the ALJ's determination that plaintiff's allegations regarding the limiting effects of his symptoms are not credible. The ALJ made his credibility determination based on consideration of the entire case record, looking at the factors listed in the regulations, such as plaintiff's daily activities. SSR 96-7p, 1996 WL 374186, at *3. For example, as noted by the ALJ, plaintiff testified that he went golfing in August 2010, and is able to attend his children's inside extra-curricular events and drive a vehicle. (R. 23). The ALJ's decision regarding the credibility of plaintiff's statements is supported by substantial evidence in the record. Accordingly, this objection is overruled.

3.   The ALJ's Reliance on VE Testimony

Plaintiff contends the ALJ failed to elicit sufficient testimony from the VE regarding how plaintiff can work while standing if he uses one hand to hold a cane. Plaintiff argues the hypothetical questions posed to the VE do not adequately reflect his RFC as determined by the ALJ.

While a claimant has the burden at steps one through four of the sequential evaluation process, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. Pass, 65 F.3d at 1203. A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. See Johnson, 434 F.3d at 659 (determining hypothetical question was valid where it adequately reflected plaintiff's RFC as determined by the ALJ from substantial evidence in the record).

10

In response to the ALJ's first hypothetical question, the VE testified that a hypothetical individual with some of the functional limitations noted by the ALJ, not including need for an ambulatory device, could not perform plaintiff's past work. However, the VE named the following three jobs that such an individual could perform: protective clothing issuer, ticket clerk, and ticket stamper. (R. 65). The ALJ's second hypothetical question asked the VE to consider whether any of these three jobs would accommodate a sit or stand option. A job with a sit or stand option does not require permission to sit and/or stand, and job-related tasks can be performed while sitting or standing. (R. 65). The VE stated that although the definitions of the three jobs in the Dictionary of Occupational Titles does not mention a sit or stand option, these jobs

> would provide an employee with at [sic] table that is waist high or a stool and chairs for the individual to be able to change positions, as long as they did not leave the work station. In reference to the protective clothing issuer, the individual would have an opportunity to sit when they were not gathering the garments that would need to be issued to other employees.

(R. 66).

The ALJ's third hypothetical question inquired about whether these jobs would accommodate the use of an assistive device such as a cane. The ALJ specifically asked the following: "Now assume that this individual would require the assistance of an ambulatory device. By ambulatory device I mean a cane for ingress and egress of the work place. Would that change the sampling?" (R. 66). The VE responded that this additional limitation would not change the sampling. (R. 66). The VE also stated that although most light work jobs "require that an individual be able to walk and ambulate and carry with both hands throughout a large portion of the day," the three sample jobs do not have this requirement. (R. 66).

The ALJ's third hypothetical question only addressed plaintiff's need to use a cane for

11

ingress and egress of the workplace. (R. 66). However, plaintiff's RFC dictates that he "must use an assistive device such as a cane *while working*." (R. 24) (emphasis added). In addition, the ALJ's RFC finding states that plaintiff must have a sit or stand option and that he must use an assistive device such as a cane "while working." (R. 20). Plaintiff contends the third hypothetical question does not address circumstances in which plaintiff would need to use the cane while standing, which would constitute use of the cane "while working," which in turn is the condition under which the ALJ determined plaintiff needs to use the cane. (See R. 20). Although the VE stated that the three sample jobs do not require an individual to "ambulate and carry with both hands throughout a large portion of the day," this response and the record do not indicate whether the three sample jobs cited by the VE can be performed while standing with the assistance of a cane, with only one hand unoccupied and available for work activities. (R. 66).

The hypothetical questions posed by the ALJ do not adequately reflect plaintiff's RFC as determined by the ALJ. Specifically, the question related to whether the three sample jobs would accommodate use of a cane only addressed whether a cane could be used for ingress and egress of the workplace. However, the RFC states plaintiff must use an assistive device such as a cane "while working," which encompasses more than mere ingress and egress of the workplace. Although defendant contends the RFC finding does not contemplate an inability to stand without a cane, the RFC finding states that plaintiff must use an assistive device such as a cane "while working," which pursuant to the RFC finding can be done in either a sitting or standing position. The RFC finding does not reflect whether plaintiff is capable of standing without the use of an assistive device such as a cane.

12

Because the hypothetical questions do not adequately reflect plaintiff's stated RFC, the ALJ was not entitled to rely on the responses from the VE in determining plaintiff could perform the three sample jobs. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating that an ALJ errs when he or she makes findings at step five based on a VE's answers to a hypothetical question that did not reflect each limitation caused by a claimant's impairments). Accordingly, defendant has failed to carry her burden at step five of the sequential evaluation. Thus, this issue warrants remand for further proceedings. On remand, the ALJ should clarify the meaning of his RFC finding with regard to plaintiff's need for an ambulatory device, and the hypothetical questions posed to the VE should reflect this clarification.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court REJECTS the recommendation of the magistrate judge (DE 31), GRANTS plaintiff's motion for judgment on the pleadings (DE 25), DENIES defendant's motion for judgment on the pleadings (DE 28), and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this order. The clerk is DIRECTED to close this case.

SO ORDERED this the 20th day of August, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge